# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BLUEFIELD

**DON FRANKLIN BLANKENSHIP, JR.,**

    Plaintiff,

v.                                    **Civil Action No. 1:17-cv-03735**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## **PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10), Defendant's Brief in Support of Defendant's Decision (ECF No. 13) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 14). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

## Background

Claimant, Don Franklin Blankenship, Jr., filed an application for DIB on January 19, 2014. Claimant alleged disability beginning June 15, 2011. The claim was denied initially on March 5, 2014, and upon reconsideration on May 23, 2014. Claimant filed a request for hearing on July 16, 2014. A hearing was held on May 24, 2016. Claimant appeared in Bluefield, West Virginia, and an Administrative Law Judge (ALJ) presided over the hearing from Topeka, Kansas. The ALJ denied Claimant's application on July 27, 2016. On August 3, 2016, Claimant requested a review of the ALJ's decision by the Appeals Council (AC). The AC denied Claimant's request

for review on June 9, 2017. On August 2, 2017, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF No. 2).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since June 15, 2011 (Tr. at 17). Claimant meets the insured status requirements of the Social Security Act through December 31, 2018. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the following severe impairments: diabetes, obesity, degenerative disc disease, asthma and neuropathy. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 19). The ALJ then found that Claimant has a residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday with normal breaks and sit for six hours out of an eight-hour workday with normal breaks) with the following limitations: he could occasionally climb stairs and ramps but never ladders, ropes or scaffolds. He could occasionally stoop or kneel but never crouch or crawl. He should work in a temperature-controlled environment and should avoid concentrated exposure to pulmonary irritants, unprotected heights, excessive vibration and hazardous machinery (Tr. at 19). At the fourth inquiry, the ALJ found that Claimant cannot perform past relevant work (Tr. at 24). At the fifth inquiry, the ALJ found that Claimant can perform jobs that exist in significant numbers in the national economy such as cashier, routing clerk and folding machine operator (Tr. at 25). On this basis, Claimant's application was denied. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on May 22, 1975. He graduated from high school. On the date of the hearing, Claimant weighed 440 pounds and stood approximately 6 feet tall. He lives with his wife and two children. Claimant previously worked as a truck driver.

## The Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief, Claimant's Reply and the ALJ's decision to the extent as follows.

4

On June 11, 2012, Sandra Estep, FNP-BC, of Tug River Health Association, Inc., examined Claimant in connection with his high blood pressure and to provide medication refills (Tr. at 343). Claimant reported no numbness in his feet or legs but did report joint and lower back pain (Tr. at 344). The back pain radiated into his leg causing him to miss five days of work but was "resolved" (Tr. at 344). Musculoskeletal and neurological examinations of Claimant were unremarkable (Tr. at 345). Claimant was "fairly stable" (Tr. at 345).

On April 18, 2013, Claimant went to the emergency room at Princeton Community Hospital for lower back pain radiating into his right hip (Tr. at 354). He described the pain as a five on a scale of one to ten (Tr. at 354). Claimant reported no injury but attributed the pain to driving on gravel roads for 12 hours per day, 6 days a week (Tr. at 354). On examination, Claimant was normal neurologically with full range of motion in his extremities (Tr. at 355). He had a decreased range of motion in his lower back (Tr. at 355). An x-ray showed mild disc spacing narrowing at the L4-L5 level, but was "otherwise negative" (Tr. at 355). The findings were "not significantly changed" when contrasted with a 2005 x-ray (Tr. at 357). Claimant was instructed on discharge to use a warm moist pack as needed, to avoid prolonged sitting and heavy lifting of items greater than 20 pounds and to follow-up with a specialist (Tr. at 351).

Stephen Nutter, M.D., of Tri-State Occupational Medicine, Inc., performed a consultative examination on May 9, 2014 (Tr. 390-394). Claimant reported a history of back pain beginning in 2001 with radiculopathy in the upper and lower extremities, which included pain and numbness (Tr. at 390). Dr. Nutter observed that Claimant walked with a limp but was "not unsteady" and did not need a cane to walk (Tr. at 391). Claimant had negative straight leg raising in his left leg upon examination (Tr. at 393). Straight leg raising for the right leg was positive in the seated and supine positions (Tr. at 393). Claimant reported to Dr. Nutter that he could not stand on his right leg

5

because of pain (Tr. at 393).  He also had tenderness in the paraspinal muscles and the spinous processes of the entire dorsal and lumbar spine (Tr. at 393).  Dr. Nutter reported minor decreases in sensation of the feet, inability to perform tandem gait walking, and inability to squat (Tr. at 393).  Dr. Nutter's impressions were chronic lumbar strain, arthralgia and possible carpal tunnel syndrome (Tr. at 394).

On May 23, 2014, Rogelio Lim, M.D., a state agency physician, analyzed Dr. Nutter's report and the other record evidence and opined that Claimant could perform light work with postural and environmental limitations (Tr. at 85-90).

On March 26, 2015, Dr. Robert P. Kropac performed an orthopedic examination of Claimant in relation to his lower back pain, which radiated to his right leg (Tr. at 427).  Claimant told Dr. Kropac that he not been treated for two to three years but recently his pain had gotten worse (Tr. at 427).  Claimant had tenderness and a reduced range of motion, particularly on his right side (Tr. at 428).  Straight leg testing was positive in the right leg and negative in the left at 90 degrees in the sitting position (Tr. at 429).  Dr. Kropac assessed Claimant with lumbosacral strain and directed him to continue over the counter medication for pain, begin physical therapy, undergo an MRI scan and to return to the office in six weeks (Tr. at 429-430).

On May 5, 2015, Claimant returned to Dr. Kropac for an orthopedic re-examination and re-evaluation (Tr. at 425).  Dr. Kropac examined the lumbosacral spine MRI from March 2015 which showed small broad based central disc protrusion at T12-L1, resulting in mild spinal stenosis (Tr. at 425).  The MRI also showed moderate right lateral recess compromise at L4-L5 and mild left neuroforaminal stenosis at L4-5 (Tr. at 425).  Dr. Kropac commented that Claimant reported that his pain was better but was constant (Tr. at 425).  On examination, Claimant had tenderness to palpation over the lower lumbosacral spine and paraspinous muscles (Tr. at 425).  He observed

tenderness in the sciatic notch and limited range of motion throughout the spine (Tr. at 425). Straight leg raising on the right side was positive and negative on the left side (Tr. at 426). Dr. Kropac reported that Claimant's sensation remained grossly intact throughout the lower extremities, he could walk without a limp and could heel and toe walk without evidence of weakness (Tr. 426). Dr. Kropac diagnosed Claimant with discogenic lower back disease right lower extremity with a radicular component (Tr. at 426). Dr. Kropac continued Claimant on Motrin for swelling and also prescribed Ultram for pain (Tr. at 426). "No other treatment [was] recommended" and Claimant was to return in three months (Tr. at 426).

Claimant weighed 425 pounds and had a BMI of 56.1 in July 2015 (Tr. at 478). He was encouraged to regularly exercise and modify his diet (Tr. at 480). Claimant returned to Dr. Kropac on August 4, 2015, and December 3, 2015, and reported no changes (Tr. at 511, 513). However, Claimant reported that "the use of medications does allow a more functional and social life existence than would otherwise be possible . . . ." (Tr. at 511). Dr. Kropac's examination findings were similar to that of May 2015 and he recommended the same course of treatment (Tr. at 512, 514).

On December 3, 2015, Dr. Kropac filled out a prescription slip addressed to "whom it may concern," and wrote that Claimant was "not capable of returning to work. He needs restrictions precluding any heavy lifting, pushing [or] pulling" (Tr. at 560).

On May 11, 2016, Claimant again saw Dr. Kropac with complaint of left knee pain, however his "major complaint is still his lower back" (Tr. at 568). Claimant had not gone to physical therapy as instructed for his left knee and his lower back pain remained constant (Tr. at 568). Claimant reported to Dr. Kropac that "the pain is more tolerable with the use of medication" (Tr. at 568). On examination, straight leg testing was positive in the right leg and negative in the

left at 90 degrees in the sitting position; he was tender on palpitation; his reflexes were normal; he could heel and toe walk without weakness; and he walked without a limp (Tr. at 569). Dr. Kropac encouraged Claimant to go to physical therapy, take Neurontin for pain, have a left knee MRI and to return for evaluation of his left knee (Tr. at 569). Dr. Kropac also noted "No other treatment [was] recommended" (Tr. at 569).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to properly conduct step three of the five-step sequential evaluation of Claimant's impairments. Claimant argues that the Administrative Law Judge (ALJ) failed to identify the Listings of impairments that he considered (ECF No. 10). Claimant asserts that "the ALJ declined to give any explanation for how he compared the medical findings in [Claimant's] record to the criteria contained in the relevant listings." (*Id.*) Claimant avers that the ALJ's analysis was incomplete, therefore, resulting in a decision that was not supported by substantial evidence.

In response, Defendant asserts that substantial evidence supports the ALJ's Listing analysis at step three, "where Plaintiff failed to identify evidence suggesting that he met all of the criteria for any listing." (ECF No. 13). Defendant avers that the ALJ properly determined that Claimant's back impairment did not satisfy the requirements of Listing 1.04 regarding disorders of the spine. Additionally, Defendant asserts that Claimant failed to establish that he met the criteria for Listing 11.14 regarding peripheral neuropathy. (*Id.*) Defendant asserts that the ALJ properly evaluated Claimant's obesity.

### Discussion

The Act defines disability in terms of the effect a physical or mental impairment has on a claimant's ability to function in the workplace *Sullivan v. Zebley*, 493 U.S. 521, 528- (1990); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). A claimant bears the burden of showing not

8

only that he has a medically determinable physical or mental impairment, but also that it is so severe that it prevents him from engaging in any substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A); *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986). It is Claimant's burden to prove that he is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).

The responsibility for determining whether Claimant is disabled is reserved to the commissioner. 20 C.F.R. § 404.1527(d). The Commissioner utilizes a sequential evaluation process in evaluating disability claims. 20 C.F.R. § 404.1520. The claimant bears the burden of proof through step five. 20 C.F.R. §§ 404.1520(e)-(g). At step five, only the burden of production shifts to the Commissioner to demonstrate that alternative jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(g). Here, the ALJ found Claimant not disabled at step five because there were jobs that existed in significant numbers in the national economy that he could perform (Tr. at 24-25). 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").

"An ALJ's explanation for their step-three determination is insufficient if they state only that they considered the listing of impairments and 'offer [ ] nothing to reveal *why*' they made their determination." *McDaniel v. Colvin*, No.2:14-cv-28157, 2016 WL 1271509, at *4 (S.D. W. Va. Mar. 31, 2016) (quoting *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015)). The "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Johnson v. Berryhill*, No. 2:17-cv-01608, 2018 WL 1096463, at *10 (S.D. W. Va. Feb. 1, 2018) (citations omitted), adopted by 2018 WL 1095581.

"However, if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination." *McDaniel*, 2016 WL 1271509, at *4 (citations omitted); *see Six v. Colvin*, No. 3:15-cv-14377, 2016 WL 7040850, at *2–3 (S.D. W. Va. Dec. 1, 2016). ALJs only need to "review medical evidence once in [their] opinion[s]." *McDaniel*, 2016 WL 1271509, at *4 (quoting *McCartney v. Apfel*, 28 F. App'x. 277, 279 (4th Cir. 2002)). Thus, "[a] cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Id.* (citations omitted). "[I]f the court need not look beyond the ALJ's opinion to find substantial evidence supporting the ALJ's step-three determination, the ALJ's decision may be affirmed." *Johnson*, 2018 WL 1096463, at *11 (citations omitted).

In *Johnson*, at step two, the ALJ found that the claimant had degenerative disc disease of the lumbar and cervical spine. *Id.* at *2. At step three, the ALJ evaluated the claimant's disease under Listing 1.04. *Id.* at *11. The ALJ found that the claimant "did not have any 'evidence of nerve root compression, spinal arachnoiditis, or lumbar stenosis' as required to meet Listing 1.04." *Id.* at *9 (citations omitted). On appeal, the claimant argued that the "ALJ failed to compare any medical evidence of his cervical spine impairment to the listing criteria, precluding meaningful judicial review." *Id.* The court disagreed, finding that "[w]hile the ALJ did not specifically include the discussion of the medical evidence at step three, the ALJ's explanation for his step three findings [was] clear from the decision itself." *Id.* at *12.

Listing Criteria

In the present matter, Claimant does not identify which section of Listing 1.04 that he believes he satisfies (ECF No. 10). He asserts that there was MRI evidence concerning spinal

stenosis, positive straight leg raising tests, radicular symptoms, and a limping gait. (*Id.*) This summation does not meet the criteria for any of the three potential 1.04 listings.

To establish disability under Listing 1.04A, Claimant must present evidence demonstrating that he meets the criteria which included (1) a spinal disorder resulting in a compromise of a nerve root; (2) with evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (3) limitation of motion of the spine; (4) motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss; and (5) if there is involvement of the lower back, positive straight leg-raising test (sitting and supine). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. In the present matter, there is no evidence of nerve root compromise or motor loss/atrophy with sensory or reflex loss.

Listing § 1.04B requires spinal arachnoiditis, confirmed by an operative note or pathology report, manifested by severe burning or painful dysesthesia, and resulting in the need to change position or posture more than once every two hours. *Id.* at § 1.04B. In the present matter, there was no diagnosis of spinal arachnoiditis. Additionally, there was no report of painful burning or dysesthesia.

Listing § 1.04C requires lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, resulting in an inability to ambulate effectively. *Id.* at § 1.04C. In the present matter, there were findings of mild spinal stenosis, however, no findings of an inability to ambulate effectively. The ALJ discussed the imaging in 2015 that showed "a broad based central disc protrusion at the T12-L1 level with mild spinal stenosis." (Tr. at 21). The ALJ also noted that "[C]laimant's gait was not antalgic." (*Id.*) More so, Claimant consistently demonstrated a normal gait and an ability to walk without an assistive device (Tr. at 391, 429, 450, 454, 459, 464, 505).

As defined in the regulations, the inability to ambulate effectively is "an extreme limitation of the ability to walk." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(b)(1). It is defined, generally, as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* The regulations provide examples of an inability to ambulate effectively, including the "inability" to walk without the use of a walker, two crutches, or two canes. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(b)(2). *See Richardson v. Colvin*, No. 2:14-CV-13354, 2015 WL 4772399, at *21 (S.D.W. Va. May 18, 2015), *adopted by*, 2015 WL 4772412 (S.D.W. Va. Aug. 12, 2015) (claimant did not prove he had the inability to ambulate effectively where he did not use an assistive device limiting the "functioning of both upper extremities," used at most a single cane, and took his daughter to the park, school, and the movies).

In the present matter, even during the examination where Dr. Kropac identified mild spinal stenosis, Claimant could heel and toe walk without evidence of weakness (Tr. at 426). And as the ALJ explained, Dr. Kropac's findings on these points "remained consistent during subsequent examinations in 2015 and 2016" (Tr. at 21, 510, 512-13, 563, 565-566, 569). The ALJ provided a comprehensive discussion of the medical evidence, which established that Claimant failed to meet the burden of demonstrating that he satisfies the criteria for a Listing.

In order to meet the criteria for Listing 11.14, a claimant must experience peripheral neuropathies with:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 2. Interacting with others (see 11.00G3b(ii)); or

> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14. Claimant does not demonstrate the criteria for A or B. Although Claimant refers to an August 2014 treatment note where his subjective report included numbness in the left leg, the record is void concerning an extreme limitation with respect to his ability to stand from a seated position, balance while walking or standing, or using his upper extremities. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14A. To the contrary, Claimant demonstrated a normal gait and an ability to walk without an assistive device (Tr. at 391, 429, 450, 454, 459, 464, 505). As the ALJ discussed, Dr. Kropac repeatedly reported that Claimant could heel to toe walk and had a nonantalgic gait (Tr. at 21, 510, 512-513, 563, 565-566, 569). Based on the above listing criteria, Claimant has failed to demonstrate that he meets Listing 11.14.

Claimant asserts that the "ALJ failed to explain how he considered [Claimant's] morbid obesity in combination with any of his other severe impairments" under Social Security Ruling (SSR) 02-01p (ECF No. 10). However, the ALJ found that Claimant's obesity was a severe impairment (Tr. at 17). The ALJ then discussed Claimant's BMI and explained that any BMI reading over 29 indicated obesity (Tr. at 22). *See* SSR 02-1p, 2002 WL 34686281, at *1 (explaining that the agency removed obesity as a listing-level impairment in 1999 because obesity alone "did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity"). The ALJ then discussed SSR 02-01p and stated that he considered it in making the RFC assessment. (*Id.*) Claimant failed to demonstrate how his obesity affected his ability to work. Accordingly, the ALJ properly evaluated Claimant's obesity.

Harmless Error

"Courts have routinely applied a harmless error analysis to administrative decisions that do not fully comport with the procedural requirements of the agency's regulations, but for which remand 'would be merely a waste of time and money.' The Fourth Circuit has applied a similar analysis in the context of Social Security disability determinations." *Hedrick v. Colvin*, No. 3:14-23775, 2015 WL 5003658, at *9 (S.D. W. Va. Aug. 21, 2015) (citations omitted). Generally, a procedurally deficient decision does not need to be remanded "absent a showing that the [complainant] has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* (citations omitted); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

"An ALJ's error is harmless when it does not substantively prejudice the claimant." *Hedrick*, 2015 WL 5003658, at *9 (citing *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015); *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x. 95, 101 (4th Cir. 2015); *Austin v. Astrue*, No. 7:06cv00622, 2007 WL 3070601, *6 (W.D. Va. Oct. 18, 2007)). "In order for a reviewing court to find an error harmless, the court must be able to plainly see from the ALJ's written decision that the prejudicial effect of the ALJ's mistake was, in some way, remedied, so that a final determination of nondisability is indeed supported by substantial evidence." *Meadows v. Colvin*, No. 1:14-15147, 2015 WL 3820609, at *15 (S.D. W. Va. June 18, 2015).

Here, at step two, the ALJ found that Claimant suffers from severe impairments of diabetes, obesity, degenerative disc disease, asthma and neuropathy. At step three, the ALJ held that Claimant's impairments did not meet the severity of one of the Listings. The ALJ did not identify under which listing he considered Claimant's impairments, or the criteria for that listing.

Before moving to step four, the ALJ found:

> With regard to the claimant's alleged impairments, the record does not contain medical findings obtained on clinical examination or special study that are the same as or equal to any of those listed in any subsection of the Listings of Impairments. I have reviewed all of the evidence and conclude that the claimant's alleged impairments do not meet or equal the severity of any listing (Tr. at 19).

Even if the ALJ did not explicitly discuss Listings 1.04 and 11.14 in step three, his failure to do so was harmless because Claimant did not establish the criteria as required to meet a Listing. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see Berry v. Astrue*, No. 3:10- cv-00430, 2011 WL 2462704, at *9 (S.D. W. Va. June 17, 2011) ("The Court does appreciate shortcomings in the ALJ's written explanation of his 12.05 analysis, but finds these inadequacies to be harmless inasmuch as the ALJ's ultimate decision has substantial evidentiary support."). Thus, even if the ALJ did err, the error did not substantively prejudice Claimant, rendering remand unnecessary.

Furthermore, the Fourth Circuit does not require an ALJ to discuss every piece of evidence in the record. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Where, as here, the ALJ stated that he has considered all of the evidence (Tr. at 15), "absent evidence to the contrary," a reviewing court should "take him at his word." *Id.* Indeed, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Id.*

## Conclusion

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes him from performing not only his previous work, but also any other

substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 13), AFFIRM the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   August 29, 2018

Dwane L. Tinsley
United States Magistrate Judge